BOLIN, Judge.
Plaintiff seeks judgment for $2604.83 for materials and labor furnished to R. O. Roy & Co., Inc. for converting a drilling rig from a single mast to a telescoping-type double-joint mast and extra work related to the conversion. It was stipulated that if plaintiff obtained a judgment it would be against R. O. Roy, individually. Roy denies the debt, alternatively pleads estoppel under the doctrine of “accord and satisfaction” and reconvenes for $1150.05. For reasons made a part of the record the lower court rendered judgment in favor of plaintiff for $2108.09 and rejected defendant’s reconventional demand. R. O. Roy appeals and plaintiff answers the appeal seeking to increase the award to the amount of his original demand.
The trial judge set forth the facts with clarity and brevity. We are in accord with most of his findings and shall recite the points we consider necessary for a proper disposition of the case.
Roy ’owned a portable drilling rig mounted on a float-type trailer. The rig had a mast or derrick about 45 feet in length mounted in such a manner that it could be raised and placed upon a location selected for drilling for oil or gas. Because of the height of the derrick, the rig was capable of utilizing only one joint of drill stem pipe at a time. Roy desired to heighten the derrick by expanding and strengthening the bottom of the existing mast enough to permit an additional 45-foot section to be installed inside the original mast in such a manner as to telescope upwards, lock and make a total height of approximately 90 feet.
In 1960 Roy had plans drawn for the proposed enlargement of the rig and at that time discussed the probability of having the work done by a company other than plaintiff’s. In January, 1967, Roy discussed with Mr. Walton the proposal to convert the derrick from a one to a two-joint telescoping mast. Roy contends, and so testified, that an oral contract was entered into between the parties whereby plaintiff agreed to do all the necessary work for $1500, provided Roy furnish the materials.
Walton gives an entirely different version of the transaction. He testified he had seen the blueprints for the proposed construction at the time they were shown to the other welding company. When Roy contacted Walton in January, 1967, the latter said he did not agree to do any work on a contract basis. He testified he agreed to do the conversion for Roy at an hourly rate for the time actually needed to complete the work. At that time Walton was charging $6.00 per hour for welding performed at the shop, and $7.00 per hour for work away from the shop. Walton admitted estimating the labor cost alone would be between $1500 and $1800 in addition to materials.
Soon after the January, 1967, meeting the trailer with the drilling rig was delivered to plaintiff’s welding shop and the undertaking was commenced. Walton kept a record of the hours worked by his welders *217 as work progressed. During this time Roy visited Walton’s welding shop almost daily.
Although denied by Roy, we agree with the trial judge that Roy made many changes in his original plans. These changes necessitated extra work on the mast, drilling rig and trailer; enlargement of the derrick floor; construction of a different type cable-operated lift, etc.
The work was completed about April 30, 1967, and on that date Walton mailed Roy an invoice for $4076.27. This invoice was received by Roy on May 3, 1967. On May 4, 1967, Roy sent a letter to Walton requesting a separate bill for $1500 for the conversion of the mast, attaching a suggested form for this bill and, additionally, attaching a suggested form for itemizing the extra work. In this letter of May 4, 1967, Roy further advised Walton that his foreman, J. R. Stanford, had a complete log of the work done by Walton on the rig so the bills could be easily checked against the log.
On May 5, 1967, Roy took physical possession of the rig and moved it from plaintiff’s place of business. On May 10, 1967, Roy executed a check for $1500 payable to Walton Welding and Machine Shop, with a notation typed on the front of the check “complete payment for converting Roy drilling mast from one joint to two joints”. This check was delivered to one of plaintiff’s employees at his welding establishment. At the time the $1500 check was delivered, and for several days prior thereto, Walton had been confined to a Shreveport hospital with a severe heart condition. Mrs. Walton, bookkeeper for her husband, took the $1500 check, stamped it “For Deposit Only” and deposited it in a Shreveport bank. While there is some dispute over whether or not Walton had knowledge of the check being deposited by his wife, we are satisfied he first learned of this while he was in the hospital several days after the deposit was made.
Plaintiff filed in evidence all of his invoices and daily work orders, which satisfies us he performed services for Roy to-talling $4076.27 as of April 30, 1967, and that he performed additional work at Roy’s request from May 1, through June 21, 1967, totalling $254.80. The evidence further shows plaintiff was paid $1500 on May 10, 1967, $155.86 on June 5, 1967, and $70.38 on June 21, 1967, leaving an unpaid balance of $2604.83. The trial judge arrived at an unpaid balance of $2108.09, which computation did not take into account the fact that plaintiff had increased the hourly rate for his services by $1.00 beginning February 1, 1967, and that this increase was made known to defendant. We find Roy owes plaintiff $2604.83, unless the debt has been satisfied or reduced by proof of the facts alleged by Roy in his special defense or reconventional demand.
We shall consider first the question of whether the debt has been satisfied under defendant’s special defense of “accord and satisfaction”. This common law doctrine apparently has no codal or statutory foundation in the substantive law of Louisiana. One of the earliest cases applying estoppel, which was later cited as authority for adoption of the doctrine of “accord and satisfaction”, was Berger v. Quintero, 170 La. 37, 127 So. 356 (1930), wherein the court held a party sued could be estopped from denying a debt under certain circumstances. It is interesting to note the case makes no mention of the doctrine of accord and satisfaction. In Davis-Wood Lumber Co., Inc. v. Farnsworth & Co., Inc., et al. (La.App.Orl.1937), 171 So. 622, the court squarely held the common law theory of accord and satisfaction had become part of our jurisprudence. There, the court observed a transaction or compromise under Louisiana Civil Code Article 3071 had not been established, but nevertheless the court held plaintiff es-topped to claim an additional amount after acceptance of checks bearing the endorsement to the effect they were paid in full settlement of the amount owed. Since Berger and Davis-Wood Lumber Co., there have been numerus decisions embracing the *218 doctrine, including Braudaway v. United Equitable Insurance Company, (La.App. 4 Cir.1968), 208 So.2d 359, and cases cited therein.
This, like most common law doctrines which have become engrafted upon our civil law concepts, tends to add confusion to our jurisprudence. Therefore, it has been rightfully held accord and satisfaction is an affirmative defense and a party who asserts it should be held to strict proof thereof. (See La.C.C.P. 1005 and official comments and cases cited thereunder).
The common law concept has been defined in 1 C.J.S. Accord and Satisfaction § 1, pp. 462-463, as follows:
“Accord and satisfaction is a method of discharging a contract, or settling a cause of action arising either from a contract or from tort, by substituting for such contract or such cause of action an agreement for the satisfaction thereof, and executing such substituted agreement. An ‘accord’ is an agreement whereby one of the parties undertakes to give or perform, and the other to accept, in satisfaction of a claim, liquidated or in dispute, and arising either from contract or from tort, something other than or different from what he is, or considers himself, entitled to; and a ‘satisfaction’ is the execution, or performance, of such an agreement.
“An ‘accord and satisfaction,’ therefore, consists of the two elements expressed in the phrase, and designates the completed transaction; it is the agreement and its performance, an executed agreement of accord, or the complete substitution of the new agreement, creating rights different from those under the antecedent claim or demand, in place and satisfaction thereof. In other words, an ‘accord and satisfaction’ arises where parties, by a subsequent agreement, have satisfied the former one, and the latter agreement has been executed.”
We agree with the trial court that the defense of accord and satisfaction avails the defendant nothing under the facts of this case. In the first place, on the date the $1500 check was delivered to plaintiff there was no dispute as to the claim since, just a few days before, plaintiff had mailed defendant an invoice for $4076.27, which showed much of the work performed by plaintiff was in addition to that necessary to convert the drilling rig. The notation on the $1500 check shows on its face that it was for the conversion of the mast and for nothing more. It is apparent to us that Roy merely sent plaintiff the $1500 check as part payment of the total bill which he knew, or should have known, would greatly exceed the amount of the check. Why else would Roy have mailed the letter of May 4, 1967, to Walton asking for a separate bill for the $1500 for conversion of the mast, and an additional itemization of the extra work? It is also inconceivable to us how Roy could contend the $1500 was full payment when, on June 15, 1967, he wrote a letter to plaintiff as follows:
“Walton Welding and Machine Shop
1625 Grimmet Drive
Shreveport, Louisiana
“Mrs. Walton ’phoned this morning as I was leaving for the country. We have already paid fully for converting our one joint workable mast into a two joint workable mast.
“We are ready to pay for any work over and beyond that conversion as soon as detailed statements are received showing what we are charged with and how much for each item.
“As previously advised, I am compelled to be in the country for a week or so but your statements will be handled as speedily as possible.
/s/ R. O. Roy
President.”
*219 Defendant reconvened for $918 for the alleged destruction of a rotary hose attached to the rig and for the cost of some trucking services related thereto. The trial judge, after commenting on the evidence relating to the reconventional demand, concluded Roy had failed to prove these claims. We find no error in this conclusion.
For the reasons assigned the judgment appealed from is amended by increasing the award to plaintiff from $2108.09 to $2604.83, and, as thus amended, is affirmed at appellant’s cost.